Frank W. Volk
United States District Judge

**Dated: March 31st, 2020**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

**AT CHARLESTON**

| IN RE: | CASE NO. 2:19-bk-20387 |
|---|---|
| BRENDA DELORSE JUSTICE, | CHAPTER 13 |
| Debtor. | JUDGE FRANK W. VOLK |

**MEMORANDUM OPINION AND ORDER**

Pending is the Chapter 13 Trustee's Objection to the Debtor's Exemptions ("Trustee's Objection") [dckt. 16]. Ms. Justice responded to the Trustee's Objection, and the Trustee filed her Reply [dckts. 19 & 30]. Both parties filed further responses [dckts. 33, 39, 40 & 42]. The matter was heard December 4, 2019. The objection is ready for adjudication.

**I.**

**A. Facts and Procedural History**

Ms. Justice filed her Chapter 13 Petition on September 6, 2019. In her schedules, she listed her unencumbered residence at 469 Little Horse Creek Road in Julian. She valued the property at $48,300. Ms. Justice took the customary $25,000 exemption in her residence pursuant to West Virginia Code § 38-10-4. She also took a $5,000 exemption in her residence pursuant to West Virginia Constitution Article 6, Section 48 and West Virginia Code § 38-9-1, which is a West Virginia homestead exemption for general collection of "all debts and liabilities."

The Chapter 13 Trustee asserts that Ms. Justice cannot "stack" both exemptions together and that her reliance on the West Virginia Constitution is misplaced inasmuch as the $25,000 exemption alone applies. Section 38-10-4 specifically concerns bankruptcy cases, while West Virginia Code § 38-9-1 does not. Furthermore, the Trustee disputes the applicability of a case relied upon by Ms. Justice, *In re Hatfield*, case no. 3:14-bk-30271 (Feb. 28, 2019), and provides distinguishing arguments for the other cases cited by Ms. Justice. She explains that the decision in *Hatfield* dealt primarily with *Federal Rule of Bankruptcy Procedure* 4003(b) and its timeliness provision and not the substance of the West Virginia exemptions. The Trustee asserts that her Objection was filed timely in this case pursuant to Rule 2004, unlike the situation in *In re Hatfield*.

Ms. Justice relies on *In re Hatfield*, as well as several other cases, to support her position that she should be permitted to "stack" the two exemptions for a total of $30,000. She asserts that § 38-10-4, while setting out the specific exemptions for bankruptcy cases, does not contain any prohibition on a debtor using the constitutional exemption which is memorialized in § 38-9-1 along with the bankruptcy exemptions. She asserts that the debtor in *In re Hatfield* successfully employed the exemptions in question here and that the decision logically extends to this situation. Specifically, Ms. Justice asserts that, in *In re Hatfield*, "[t]he decision of the United States Bankruptcy [Court] [sic] for the Southern District of West Virginia did not find that the exemptions by the Debtor were wrong or should be disallowed." [dckt. 19, p. 1]. She provides extraterritorial citations assertedly supportive of her position.

2

## II.

### A. Governing Standards

In bankruptcy, debtors are permitted to protect certain essential property from creditors. The means for doing so is by exempting the property from the bankruptcy estate. "The historical purpose of . . . exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge." *Morehead v. Morehead (In re Morehead)*, 283 F.3d 199, 206 (4th Cir. 2002) (internal quotation marks omitted). These "exemptions can afford the debtor some economic and social stability, which is important to the fresh start guaranteed by bankruptcy." *Id.* at 202-03.

Bankruptcy Code section 522 permits debtors to exempt either property specified in the federal list (contained in § 522(d)) or, instead, any "property that is exempt under federal law, other than subsection (d) of this section, or state or local law." 11 U.S.C. § 522(b). Debtors may choose the federal list "unless the state law that is applicable to the debtor under paragraph (3)(A) of this subsection specifically does not so authorize." *Id.* This last provision is referred to as the "opt-out," and it allows states to restrict debtors' exemptions to those enumerated in state law and non-bankruptcy federal law. *Id.*; *Sheehan v. Peveich*, 574 F.3d 248, 252 (4th Cir. 2009) ("Section 522(b)(1) affords the states the authority to restrict their respective residents to exemptions promulgated by the state legislatures, if they so choose."). Most states, including our own, have enacted the "opt-out" provision. Thus, Ms. Justice's exemptions are governed by West Virginia law.

West Virginia allows a debtor in bankruptcy to exempt a certain amount of real property, or interest in real property, which is used as a primary residence. W.V. Code § 38-10-

3

4(a). According to that subsection, entitled "Exemptions of Property in Bankruptcy Proceedings," a debtor may exempt his or her "interest, not to exceed twenty-five thousand dollars in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence . . . ." *Id.* That is the extent of the West Virginia bankruptcy exemption dedicated to real property.

The West Virginia Constitution, in Article 6, section 48, dictates that "[a]ny husband or parent, residing in this state, or the infant children of deceased parents, may hold a homestead of the value of five thousand dollars . . . exempt from forced sale, subject to such regulations as shall be prescribed by law . . . ." W. Va. Const. Art. 6 § 48. In conjunction, the West Virginia Code provides a homestead exemption under the "Liens" provision at § 38-9-1, which states that "[a]ny husband, wife, parent or other head of a household residing in this state, or the infant children of deceased or insane parents, owning a homestead shall by operation of law have a homestead exemption therein to the value of $5,000, subject to the provisions of section forty-eight, article six of the Constitution of this state." W. Va. Code § 38-9-1. Importantly, that section, along with its companion sections, deals with the Legislature's prescribed means for executing against property based on a lien or judgment. Bankruptcy exemptions are not mentioned and, thus, not contemplated.

As noted, the Court has had occasion to address an aspect of exemption law in an unpublished decision, *In re Hatfield*, case no. 3:14-bk-30271. The case involved lien avoidance. The Court addressed Mr. Hatfield's exemptions briefly and found his exemptions acceptable simply because no party had objected within the amount of time prescribed by *Federal Rule of Bankruptcy Procedure* 4003. Pursuant to 11 U.S.C. § 522(l), if no objections are filed within the time period prescribed by Rule 4003, the exemptions claimed on a debtor's list are treated as valid. 11 U.S.C. § 522(l). Here, Ms. Morris filed her objection timely. *In re Hatfield* is thus inapposite.

Ms. Justice additionally relies upon *Hovis v. Wright (In re Wright)*, 751 F.2d 714 (4th Cir. 1985). The distinction between that case and the instant matter, however, is that West Virginia has a homestead exemption in its bankruptcy exemption statute, whereas South Carolina did not have a specific exemption for the asset class there involved.

Ms. Justice next relies upon *In re Burciaga*, 944 F.3d 681 (7th Cir. 2019). Illinois, unlike West Virginia, however, does not appear to have separate code sections for bankruptcy exemptions. The case is thus of little utility.

Inasmuch as the Court is not bound by precedent, it resorts to a textual analysis of the provisions at issue. Foremost, the best exemplar of congressional intent is the statutory text. *See Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999). As the Supreme Court has noted time and again, "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6 (2000) (internal quotation marks omitted) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989); and then quoting *Caminetti v. United States*, 242 U.S. 470, 485 (1917)). Our Court of Appeals has noted the necessary rigor to be applied before a court might permissibly conclude statutory language is anything other than plain: "[t]o determine whether the language is plain, we consider 'the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" *Johnson v. Zimmer*, 686 F.3d 224, 232 (4th Cir. 2012) (alteration in original) (quoting *Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 248 (4th Cir. 2004)).

Stated even more broadly, an ambiguity does not arise until the court has availed itself of "all the 'traditional tools' of construction." *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2415

5

(2019) (agency rule) (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984) (statute)). Indeed, "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). The Supreme Court has understandably recognized that the "meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000)). Whether the chosen language is indeed plain, then, requires putting the language "in [its] context and with a view to [its] place in the overall statutory scheme." *Brown & Williamson*, 529 U.S. at 133 (internal quotation marks omitted). At bottom, a court faced with a statutory construction issue must "construe statutes, not isolated provisions." *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010) (internal quotation marks omitted). An ambiguity arises only when the statute "is susceptible to more than one reasonable interpretation." *In re Maharaj*, 681 F.3d 558, 568 (4th Cir. 2012); *see also Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 248 (4th Cir. 2004).

### B. Analysis

The West Virginia law on exemptions is found in Chapter 38, Articles 8, 9, and 10. Article 8 covers exemptions from levy under state law. Article 9 lays out the homestead exemption, with language materially identical to the aforementioned counterpart provision in the West Virginia Constitution. Article 10, however, governs federal tax liens and explicitly addresses orders and decrees in bankruptcy. Particularly noteworthy is West Virginia Code § 38-10-4,

6

entitled "Exemptions of Property in Bankruptcy Proceedings." That section states that "[a]ny person who files a petition under the federal bankruptcy law may exempt from property of the estate in a bankruptcy proceeding the following property . . . ." W. Va. Code § 38-10-4. There is no reference whatsoever to exemptions found in other sections of the West Virginia Code. There is no incorporation by reference of the homestead exemption listed in § 38-9-1.

Had the Legislature intended to augment its bankruptcy exemption scheme in the manner suggested by Ms. Justice, it might quite easily have done so with an economy of words. It did not. And that is fatal to Ms. Justice's position.

### III.

Based upon the foregoing discussion, the exemptions specified in § 38-10-4 are the only exemptions available to debtors in bankruptcy in West Virginia. Accordingly, **IT IS ORDERED** that the Chapter 13 Trustee's Objection to Exemptions be, and is hereby, **SUSTAINED.**